IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, individually and on behalf of similarly situated individuals, | )<br>)<br>)<br>) |
| *Plaintiff*, | ) No. 1:22-cv-00349 |
| v. | )<br>) Hon. Ronald A. Guzman |
| MITEK SYSTEMS, INC., a Delaware Corporation, | )<br>)<br>)<br>) |
| *Defendant.* | )<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Joshua Johnson ("Plaintiff"), individually and on behalf of similarly situated individuals, by and through his undersigned attorneys, for his Response in Opposition to Defendant Mitek Inc.'s ("Mitek") Motion to Compel Arbitration ("Motion to Compel," Dkt. 15), states as follows:

**I.     INTRODUCTION**

It is axiomatic that, in general, only signatories to arbitration agreements have standing to enforce them. Nonetheless, Mitek seeks to use a dispute-resolution provision in non-party HyreCar Inc.'s ("HyreCar") Terms of Service, which Mitek is not a party to, in order to force Plaintiff's claims into arbitration. Its Motion to Compel offers two arguments for why it should be exempt from the general rule and permitted to enforce arbitration, and both are meritless.

First, Mitek's position that it is a third-party beneficiary of any agreement between HyreCar and Plaintiff is meritless because Mitek is not identified or otherwise mentioned anywhere in HyreCar's Terms of Service, including in the arbitration provision contained therein. HyreCar identifies specific classes of beneficiaries entitled to enforce its Terms, and none of those

1

classes include Mitek. To the contrary, HyreCar's Terms specifically state that the conduct of third-party service providers such as Mitek are governed by their own terms and conditions, not HyreCar's.

Second, Mitek's argument that Plaintiff must be equitably estopped from avoiding arbitration should be rejected because Plaintiff made no representations to Mitek, and even if he had, Mitek fails to offer any evidence of how it detrimentally relied on any such representation, as required under Illinois law.

Therefore, and as discussed in further detail below, Mitek's Motion to Compel Arbitration should be denied.

## II.    FACTUAL ALLEGATIONS

Mitek is a leading developer and provider of online identity verification services, which include a biometric verification component, and integrates its service with its clients' websites in order to verify its clients' users' identities. (Class Action Complaint, "Compl.," Dkt. 1-1, ¶ 23). Plaintiff registered with HyreCar, one of Mitek's clients, in Illinois in December 2021. (*Id.* ¶ 25). As part of the HyreCar onboarding process through HyreCar's online application, Plaintiff was redirected to Mitek's photo ID verification portal, where he was required to upload his Illinois Driver's License as well as a separate "selfie" photograph. (*Id.* ¶ 25). Using facial recognition technology, Mitek scanned and compared the geometry of the face appearing on Plaintiff's Driver's License with the geometry of the face appearing in his "selfie" photograph in order to verify his identity. (*Id.* ¶ 27). Despite collecting Plaintiff's facial biometrics in Illinois, Mitek failed to obtain his informed consent to do so, failed to disclose to him the purpose of its biometric collection and the length of term for which his biometrics would be used, and failed to obtain his consent to disseminate his biometric data to others. (*Id.* ¶ 29). Accordingly, on December 16, 2020

Plaintiff filed this case against Mitek in Illinois state court under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). Plaintiff's Complaint asserts claims against Mitek under 740 ILCS 14/15(b), 740 ILCS 14/15(c), and 740 ILCS 14/15(d).

## III. LEGAL STANDARD

Under the FAA, federal courts are in the gatekeeper position of determining whether a dispute is one that the parties intended to arbitrate and is therefore arbitrable. See *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986). A party cannot be forced to arbitrate a claim without previously agreeing to arbitrate that claim. *See Kiefer Specialty Flooring, Inc. v. Tarkett*, 174 F.3d 907, 909 (7th Cir. 1999); *see also AT&T Techs., Inc.*, 475 U.S. at 648 ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"). Additionally, courts "may not expand the application of an arbitration clause beyond its intended scope." *Thomas v. Am. Gen. Fin., Inc.*, 2009 WL 781078, at *2 (N.D. Ill. Mar. 23, 2009) (citing *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)). Accordingly, "when presented with a question of arbitrability, the court will defer to the parties' intent to determine: (1) whether there is a valid arbitration agreement; and (2) whether the parties' dispute falls within the scope of that agreement." *Id.*

## IV. AS A NON-SIGNATORY TO HYRECAR'S TERMS AND CONDITIONS, MITEK CANNOT ENFORCE THE ARBITRATION AGREEMENT CONTAINED THEREIN.

As a general matter, only signatories to an arbitration agreement are entitled to enforce it. *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004).[1] Whether an arbitration agreement can be enforced by a non-signatory to that agreement is determined by state law. *Scheurer v.*

---

[1] Plaintiff agrees with Mitek that Illinois law governs whether Plaintiff agreed to arbitrate his claims.

3

*Fromm Family Foods LLC*, 863 F.3d 748, 752-53 (7th Cir. 2017). Mitek does not (and cannot) claim to be a party to the arbitration agreement contained in HyreCar's Terms of Service, and instead argues that courts have recognized several contract-based theories under which a non-signatory may, in circumstances not present here, enforce an arbitration agreement. *Id*. First, Mitek contends that it may enforce HyreCar's arbitration agreement as a third-party beneficiary. Second, Mitek argues that it may enforce the arbitration agreement under equitable estoppel principles. However, neither of these exceptions to the general rule of non-signatory unenforceability apply here, and thus Mitek's Motion should be denied.

> **A.     Mitek Is Not A Third-Party Beneficiary Of HyreCar's Terms of Service or Arbitration Agreement.**

Illinois law recognizes two types of potential third-party beneficiaries to a contract—intended and incidental—but, "[o]nly an intended beneficiary has enforceable rights under the contract." *Cont'l Cas. Co. v. Am. Nat. Ins. Co*., 417 F.3d 727, 733 (7th Cir. 2005). And Illinois law recognizes a "strong presumption against conferring contractual benefits on noncontracting third parties. To overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (internal citations and quotations omitted); *Word v. City of Chicago,* 946 F.3d 391, 397 (7th Cir. 2020) (citing *Martis v. Grinnell Mut. Reins. Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009) ("There is a strong presumption that the parties to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual").

Here, the arbitration provision in HyreCar's Terms of Service expressly states that it is an agreement between "You [the user] and HyreCar." (Mot. to Compel, Ex. 5, Dkt. 15-5, at 1) ("BOTH **YOU AND HYRECAR** AGREE, WITH THE LIMITED EXCEPTIONS NOTED

4

BELOW, TO RESOLVE ALL DISPUTES THROUGH BINDING INDIVIDUAL ARBITRATION. BINDING ARBITRATION MEANS THAT **YOU AND HYRECAR** ARE EACH WAIVING THE RIGHT TO A JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION IN THE EVENT OF A DISPUTE") (emphasis added).

Further, not only is there no mention of Mitek anywhere in the HyreCar's arbitration agreement, but the Terms of Service and dispute-resolution provisions contained therein make clear that they do not apply to any third-party service providers, such as Mitek. For instance, HyreCar's Terms of Service expressly state that the HyreCar platform may connect to third-party services, and when a user "click[s] or link[s] to a Third Party Platform, the applicable third party's terms and policies apply." (*Id.* at § 2). Elsewhere, the Terms of Service expressly identify specific beneficiaries who are entitled to the contractual protections contained therein, and Mitek is not included. (*Id.* at 2) ("This Agreement is also for the express benefit of HyreCar's **representatives, trustees, directors, officers, shareholders, subsidiaries, employees, attorneys, and agents**. If, and to the extent, an action of any kind is brought against any such person or entity on account of our Services or any communications and interactions with HyreCar through our Services, such persons or entities shall have all of the protections afforded by this agreement, including any dispute resolution procedure") (emphasis added). Indeed, the only third-party beneficiary identified in the arbitration agreement itself is a "consumer reporting agency," which Mitek does not (and cannot) claim to be. In short, the Terms of Service expressly name the entities HyreCar intended to be benefit from Terms' contractual protections, including the arbitration provision, and Mitek is not one of them.

Unable to point to anywhere in the Terms of Service or arbitration agreement where it is actually identified, Mitek relies on the arbitration agreement's extension to "authorized or

unauthorized users or beneficiaries of services or goods provided under the Agreement" (*Id.* at § 18(a)), to argue that is a member of an identified "class" of beneficiaries able to enforce the arbitration agreement—which, according to Mitek, is "class of third parties that HyreCar engages to provide services necessary to the Agreement." (Mot. to Compel at 10). In its view, Mitek is a "beneficiary" of HyreCar's services because HyreCar pays it in connection with performing biometric identity verifications of HyreCar users. But this argument makes no sense for several reasons.

First, Mitek is not a "user or beneficiary" of HyreCar's "services and goods provided under the agreement" when that language is fairly read consistently with the rest of HyreCar's Terms and Conditions. HyreCar "users" does not include Mitek, as demonstrated by the consistent distinctions HyreCar's Terms make between "users" and "third parties," including third-party service providers. (Dkt. 15-5 §§ 8, 15) ("You assume all risks associated with use of your User Content, including any reliance on its accuracy, completeness or usefulness **by us, other Users, or third parties** . . ."); ("HyreCar does not itself rent vehicles and HyreCar is neither responsible nor liable for the acts or omissions of **its users, the vehicle manufacturers or any third party product or service providers** . . .") (emphasis added). Further, Mitek is not a "beneficiary" of HyreCar's services and goods provided under the Agreement. The payment "benefit" Mitek claims it derives from HyreCar, i.e. payment to process individuals' biometrics, is not addressed anywhere in the Terms of Service. Presumably, Mitek and HyreCar are parties to a separate contract specifying the terms, including payment terms, under which Mitek "benefits" from HyreCar. In other words, Mitek does not "benefit" from the subjects addressed by HyreCar Terms of Service, such as transactions between vehicle owners and drivers, the ownership terms for "User Content," and HyreCar's warranties (or lack thereof). *Sosa*, 8 F.4th at 639 ("[E]ven if we accept that [the

defendant] ultimately incidentally incurred a benefit . . . that is not sufficient to demonstrate that [the defendant] qualifies as a third-party beneficiary under Illinois law.")

Second, Mitek's argument makes no sense from a practical standpoint. For instance, before initiating arbitration, HyreCar requires an informal dispute resolution process whereby notice must be sent be mailed to HyreCar at in Los Angeles. It would be impossible for Plaintiff to comply with the informal resolution requirement with respect to Mitek because there is no contact information for third parties. In *Sosa v. Onfido, Inc.*, a factually similar BIPA case involving a biometric identity verification vendor, Judge Aspen recently noted these practical considerations when rejecting the vendor defendant's argument that it was a third-party beneficiary entitled to enforce its client's arbitration agreement. *Sosa v. Onfido, Inc.*, No. 20-cv-04247, 2021 WL 38141, at *3 (N.D. Ill. Jan. 5, 2021), *aff'd,* 8 F.4th 631 (7th Cir. 2021) ("Plaintiff points out that the arbitration provision would not make sense as applied to third parties because it contains a notice provision, requiring a user to provide notice of an arbitrable dispute to the other side. The arbitration provision contains contact information for OfferUp but no direction as to how to contact third parties.")

At bottom, Mitek's only connection to HyreCar's Terms of Service is through HyreCar's Privacy Policy's statement that HyreCar "may also engage third parties to provide services to us, including but not limited to…services to help verify your identification, to help match the photo on your ID to other photos of yourself." (Dkt. 15-6 § 6). This connection is far too tenuous to confer third-party beneficiary status. In affirming Judge Aspen's ruling in *Sosa*, where the defendant vendor's verification service was actually identified by name (here it is not), the Seventh Circuit found that the contract's references to the defendant's technology did not equate to an indication that the contract was intended for the vendor's benefit. *Sosa*, 8 F.4th at 639. As a result,

7

the Seventh Circuit concluded that the agreement was intended to benefit only the vendor's client and its users. Similarly here, "[r]ead as whole, the Terms of Service neither provide any benefit to [Mitek] nor give [Mitek] a right to enfoce the arbitration provision." *Id.* at 640.

Mitek tries, but fails, to distinguish *Sosa*, Mitek argues first that the arbitration provision in *Sosa* applied only to disputes between the vendor's client and its users, whereas here, according to Mitek, the arbitration agreement applies to "all claims and disputes." That is not a valid distinction; Mitek ignores that the arbitration agreement here explicitly states that it covers disputes between a HyreCar user and HyreCar: "You and HyreCar mutually agree to waive our respective rights to resolution of disputes in a court of law by a judge or jury and agree to resolve any dispute or arbitration." (Dkt. 15-5 § 18). Next, Mitek suggests that the arbitration provision "**expressly** refers to services that will be provided by third parties–including the service of identify verification." (Mot. to Compel at 11) (emphasis added). That statement is simply not true; there is no mention of identity verification services, "express" or otherwise, in the entire HyreCar Terms of Service, let alone in the arbitration agreement. Finally, Mitek claims that the contract in *Sosa* did not disclose the "role of third parties," but that is also wrong. The terms of service in *Sosa* explicitly referred to the defendant vendor's payment solution, but the vendor's client disclaimed any control over that content. *Sosa*, 8 F.4th at 636. Similarly here, even though HyreCar's Terms do not mention Mitek's service, HyreCar disclaims any "damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such content, goods or services available on or through any such other Third Party Platform," such as Mitek's identity-verification platform. (Dkt. 15-5 § 2). Thus, there are no meaningful distinctions between this case and *Sosa*, and the Court should similarly reject Mitek's attempt to claim third-party beneficiary status.

Mitek argues that *Brown v. Worldpac, Inc.*, No. 17-cv-6396, 2018 WL 656082, at *1 (N.D. Ill. Feb. 1, 2018) is relevant, but there, the defendant belonged to a clearly-enumerated class unambiguously included in the arbitration provision; the plaintiff was a contractor for Partsfleet, the defendant was one of Partsfleet's customers, and the arbitration agreement applied to "all controversies hereafter arising out of or related to the parties' relationship or CONTRACTOR'S performance of services for PARTSFLEET or its customers . . ." *Brown*, 2018 WL 656082 at *3. Here, again, the only express, unambiguous beneficiaries in the HyreCar Terms of Service are HyreCar's "representatives, trustees, directors, officers, shareholders, subsidiaries, employees, attorneys and agents," and an unspecified "consumer reporting agency" (Dkt. 15-5 at 2; § 18). Thus, rather than help its argument, *Brown* illustrates precisely why Mitek does not have any third-party beneficiary rights here.

In sum, based on the plain language of HyreCar's Terms of Service, including the arbitration agreement and related provisions contained therein, and in light of the strong presumption against conferring third-party beneficiary rights, Mitek is not an intended third-party beneficiary capable of forcing Plaintiff's claims into arbitration.

**B.     Plaintiff Is Not Estopped From Pursuing His Claims Against Mitek In Court.**

Mitek's second primary argument, that it may enforce HyreCar's arbitration agreement under equitable estoppel principles, is similarly unavailing. In Illinois, "a claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Sosa*, 8 F.4th at 634. The party invoking equitable estoppel must prove it by clear and convincing evidence. *Id.*; *see also Ervin*, 812 N.E.2d at 541 (estoppel "requires a showing 'by clear, concise, and unequivocal evidence' of prejudicial reliance.")

9

Here, Mitek contends that it lacks any relationship with HyreCar's users such as Plaintiff, but that somehow Plaintiff's onboarding process with HyreCar was a "representation" to Mitek that Plaintiff agreed to arbitrate any claims with Mitek. That argument is unreasonable; Mitek quite obviously had a convenient means (simply reading the Terms) of deducing that its services were not covered by HyreCar's arbitration clause. Again, HyreCar's Terms explicitly state that users' interactions with "Third Party Platforms" like Mitek are governed by those third parties terms and conditions, not HyreCar's Terms. (Dkt. 15-5 § 2) ("When you click or link to a Third Party Platform, the applicable third party's terms and policies apply"). Moreover, Mitek's arugment that it "relies on users consenting to HyreCar's contractual terms and biometric disclosures" is completely illogical—HyreCar's Privacy Policy explicitly states that "HyreCar does not control third party websites" (like Mitek's service), acknowledges that third parties like Mitek "have their own rules about the collection, use and disclosure of your information," and thus encourages HyreCar users "to read the terms of use and privacy policies of the other websites that you visit." (Dkt. 15-6 § 8). Put simply, the argument that Mitek relies on users' agreements with HyreCar and HyreCar's "biometric disclosures" for anything relating to Mitek is completely illogical. As in *Sosa*, the only "representations that Plaintiff allegedly made in [agreeing to HyreCar's Terms] were directed at HyreCar, not third parties." *Sosa*, 2021 WL 38141, at *7.

Crucially, even if Plaintiff's onboarding with HyreCar could somehow constitute a "representation" to Mitek (it does not), Mitek offers no valid argument for how its "reliance" on any representation resulted in a detriment or prejudice. Mitek tries to distinguish *Sosa* again by claiming the defendant there failed to present any evidence of detrimental reliance, but Mitek does not prevent any evidence either. To the extent that Mitek argues that, had it known Plaintiff would not agree to arbitrate his claims against it, it would not have agreed to perform biometric identity-

verification services for HyreCar, such an argument is absurd and unsupported by any evidence (Mot. to Compel at 14). Essentially, Mitek's argument is that it relied on *HyreCar* to include Mitek as a third-party beneficiary to its Terms of Service, and HyreCar failed to do so.

Ultimately, Mitek's argument is simply that it is unfair that HyreCar's users could be required to arbitrate claims against HyreCar, a signatory to its Terms of Service, but not Mitek, a non-signatory. Unfortunately for Mitek, it is black letter law that non-signatories to arbitration agreements cannot enforce them.

Accordingly, because Mitek has failed to meet its burden, its Motion to Compel should be denied on this basis as well.

### V.     CONCLUSION

For the foregoing reasons, Plaintiff Joshua Johnson respectfully requests that this Court enter an Order denying Defendant Mitek Systems, Inc.'s Motion to Compel Arbitration in its entirety.

Dated: March 28, 2022               Respectfully Submitted,

                                    JOSHUA JOHNSON, individually and on behalf of
                                    a class of similarly situated individuals

                                    By:  /s/ Timothy P. Kingsbury
                                         *One of His Attorneys*

Timothy P. Kingsbury
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
tkingsbury@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on March 28, 2022, I caused the foregoing *Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

                                                      /s/ Timothy P. Kingsbury