**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Joshua Johnson, individually and on behalf | ) | |
| of all individuals similarly situated, | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 349 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Mitek Systems, Inc., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motion to compel arbitration [15] is denied.

**STATEMENT**

**Background**

Plaintiff alleges violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). Mitek Systems, Inc. ("Mitek") offers, among other things, biometric verification services. In or about December 2021, Plaintiff registered with one of Mitek's clients, Hyrecar, a car rental service. After signing up on Hyrecar's app using his email address, Plaintiff was redirected to a page where he was required to upload his driver's license and photograph. Mitek used its facial-recognition technology to verify Plaintiff's age and identity.

Mitek filed the instant motion to compel pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3), asserting that Plaintiff is required to arbitrate his BIPA claim. In support, Mitek points out that when Plaintiff registered for Hyrecar, he agreed to individually arbitrate "[a]ll claims and disputes . . . in connection with" Hyrecar's Terms of Service ("Agreement" or "Terms of Service").

**Analysis**

Enforcement of an arbitration clause is governed by the Federal Arbitration Act ("FAA") 9 U.S.C. § 1 *et seq.*, which states in relevant part as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA evinces a "'national policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted).

"A party moving to compel arbitration pursuant to the FAA must demonstrate: (1) the existence of a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate by another party." *Williams v. Cnty. of Cook*, 524 F. Supp. 3d 813, 817 (N.D. Ill. 2021). "At bottom . . . arbitration is contractual." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Thus, "'[w]hether a binding arbitration agreement exists is determined under principles of state contract law.'" *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citations omitted). The Court may consider documents outside the pleadings in ruling on a motion pursuant to Rule 12(b)(3). *Brown v. Hyatt Place*, No. 20 C 05240, 2021 WL 1546423, at *1 (N.D. Ill. Apr. 20, 2021). "Although the Court considers facts outside those in the [c]omplaint, it construes all facts and draws reasonable inferences in favor of the plaintiff." *Id*. (internal quotation marks and citation omitted).

Arbitration Provision

The Agreement includes the following arbitration provision:

> Applicability of Arbitration Agreement. All claims and disputes (excluding claims for injunctive or other equitable relief as set forth below) in connection with the Agreement or the use of the Platform or Service that cannot be resolved informally shall be resolved by binding arbitration on an individual basis under the terms of this Arbitration Agreement. Unless otherwise agreed to, all arbitration proceedings shall be held in English. This Arbitration Agreement applies to you and the Company, and to any subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Agreement.

(Def.'s Ex. A-3, Dkt. # 15-5, at Page 15 of 19)[1] (emphasis added). The Agreement further states that "[a]dditional information regarding our information collection and usage practices can be found in our Privacy Policy." (*Id*., at Page 11 of 19.) The Privacy Policy states, in turn, that "[y]our information may be shared as described," including as follows:

> We may also engage third parties to provide services to us, including but not limited to tax service providers, ride sharing companies, technology services, and *services to help verify your identification, to help match the photo on your ID to other photos of yourself*, to conduct checks against databases such as but not limited to public government databases, to otherwise assist us with fraud prevention and risk assessment. . . .

(Def.'s Ex. A-4, Dkt. # 15-6, at Page 10 of 18). According to Mitek, Plaintiff was twice presented

---

[1] Mitek submits the declaration of Megan Behrens, Hyrecar's Senior Vice-President, Product and Operations, to authenticate the contents of Hyrecar's Terms of Service, including the arbitration provision, and the Privacy Policy. (Def.'s Ex. A, Behrens Decl., Dkt. # 15-2.)

with and consented to Hyrcar's Terms of Service and Privacy Policy before providing his driver's license and photograph to Hyrecar.[2]  (Def.'s Ex. A, Behrens Decl., Dkt. # 15-2, ¶¶ 8, 9.)

Mitek asserts that Plaintiff's claim under BIPA falls within the broad terms of the arbitration provision, which state, in part, that "[a]ll claims and disputes (excluding claims for injunctive or other relief as set forth below) in connection with the Agreement or the use of the Platform or Service. . . ." (Def.'s Ex. A-3, Dkt. # 15-5, at Page 15 of 19.)  According to Mitek, because Plaintiff provided his photograph to Hyrecar during its registration process, and Mitek used the photograph to verify Plaintiff's identity, then Plaintiff's BIPA claim is covered by the arbitration provision. While the Agreement containing the arbitration provision was between Plaintiff and Hyrecar, Mitek asserts that it is entitled to enforce the arbitration provision both as an intended third-party beneficiary and pursuant to the principle of equitable estoppel.  The Court addresses these arguments in turn.

<u>Third-Party Beneficiary</u>

 "Illinois courts . . . recognize a 'strong presumption against conferring contractual benefits on noncontracting third parties.'" *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021) (addressing the defendant's contention that it was a third-party beneficiary of an arbitration provision) (citation omitted).  "To overcome that presumption, 'the implication that the contract applies to third parties must be so strong as to be practically an express declaration.'"  *Id*. (citation omitted).  "[F]or a nonparty to qualify as a third-party beneficiary, the language of the contract must show that 'the contract was made for the direct, not merely incidental, benefit of the third person.'"  *Id*. (citation omitted).  "This intention 'must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs.'"  *Id*. (citation omitted).

Mitek asserts that Hyrecar and Plaintiff intended the arbitration provision to benefit and obligate Mitek by stating that "[t]his Arbitration Agreement applies to you [i.e., Plaintiff] and the Company, . . . , as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Agreement."  According to Mitek, it is a beneficiary because it "receives money from Hyrecar for performing services that are necessary to the contractual relationship between Hyrecar and its customers."  (Def.'s Mem. Law Supp. Mot. Compel Arb., Dkt. # 15-1, at 10-11.)

The Court is unpersuaded.  "[A] presumption exists that contracting parties did not intend to confer beneficiary status on a third party, as parties typically enter into contracts for their own benefit."  *Ferguson v. Aon Risk Servs. Cos., Inc.*, No. 20 C 07491, 2021 WL 4439305, at *2 (N.D. Ill. Sept. 28, 2021) (citation and internal quotation marks omitted).  Mitek's strained reading of the arbitration provision does not overcome this presumption.  Hyrecar "connects car owners with

---

[2]  "This type of assent is called clickwrap, in which a webpage user manifests his assent to the terms of a contract by actively clicking an 'accept' button in order to proceed." *Sherman v. AT & T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012).  *See also Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016) ("Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement.").

3

drivers through its website and smart phone application" so that "owners rent their cars to drivers for use with third-party services such as Uber." (Def.'s Ex. A, Behrens Decl., Dkt. # 15-2, ¶ 3.) Mitek's contention that it is a "beneficiary" of the arbitration provision because it gets paid by Hyrecar to perform identity-verification services requires too broad a reading of the term to over-come the strong presumption against conferring contractual benefits on third parties; the interpre-tation Mitek espouses is far from "practically an express declaration." If Hyrecar intended Mitek to be included in the parties to whom the arbitration provision applies, it could easily have stated so expressly. It did not.

Even if Hyrecar and Plaintiff knew that Mitek would obtain some benefit, this is insuffi-cient to confer third-party beneficiary status. *See Sosa*, 8 F.4th at 639 ("It is not enough to show that the 'parties know, expect, or even intend that others will benefit from the agreement.'") (cita-tion omitted). Notably, Hyrecar's Terms of Service expressly state that the Hyrecar platform may connect to third-party services, and when a user "click[s] or link[s] to a Third Party Platform, *the applicable third party's terms and policies apply*." (Def.'s Ex. A-3, Dkt. # 15-5, at Page 4 of 19.) (emphasis added). This disavowal of the application of Hyrecar's Terms of Service to third parties stands in direct conflict with Mitek's labored interpretation of the term "beneficiary." Mitek con-tends that it is not a "Third-Party Platform," which the Terms of Service define as "other websites" or "advertisements" to which the Hyrecar platform links, because there is no way for a user to "click" or "link" to Mitek's website through the Hyrecar platform. The Terms of Service, how-ever, do not define "link" nor does Mitek elaborate on how a user's uploaded photo and personal information is transmitted from the Hyrecar app to Mitek. A reasonable user could understand that they are "linking" to Mitek's website or service in uploading their photo and driver's license information to the Hyrecar platform, thus properly categorizing Mitek as a Third-Party Platform. This is particularly true given that Hyrecar's Privacy Policy expressly states that it may "engage *third parties* to provide services to us, *including . . . services to help verify your identification,* [and/or] *to help match the photo on your ID to other photos of yourself*." (Def.'s Ex. A-4, Dkt. # 15-6, at Page 10 of 18) (emphasis added).[3]

In addition to the above factors indicating that Mitek is not a third-party beneficiary of the arbitration provision, Hyrecar's Terms of Service expressly list those to whom the arbitration pro-vision applies: "This Agreement is also for the *express benefit* of Hyrecar's representatives, trus-tees, directors, officers, shareholders, subsidiaries, employees, attorneys, and agents." (Def.'s Ex. A-3, Dkt. # 15-5, intro.) (emphasis added). Mitek does not assert that it is a member of any group included in the list. Finally, before arbitration can be commenced, Hyrecar requires an informal dispute resolution process, which necessitates notice being mailed only to Hyrecar in Los Angeles – no contact information is provided for Mitek. *See Sosa v. Onfido, Inc*., 2021 WL 38141 at *3 (N.D. Ill. Jan. 5, 2021), *aff'd*, 8 F.4th 631 (7th Cir. 2021) (noting the plaintiff's contention that "the arbitration provision would not make sense because it contains a notice provision[,]" which "contains no direction as to how to contact third parties"). While this point does not by itself

---

[3] The Privacy Policy's general reference to third parties that may provide services to Hyrecar does not bestow third-party beneficiary status on Mitek. *See Sosa*, 8 F.4th at 639 ("[The defendant] is not named in the Terms of Service but it argues the contract's reference to its technology . . . in section 4 establishes its right as a third-party beneficiary. We disagree.").

conclusively exclude Mitek as a third-party beneficiary, it is additionally persuasive in light of the other details already described.

For all these reasons, the Court finds that Mitek has not overcome the strong presumption against conferring third-party beneficiary status on nonsignatories.

Equitable Estoppel

Mitek also contends that Plaintiff is equitably estopped from pursuing his claims against Mitek. "'A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.'" *Sosa,* 8 F.4th at 641 (citation omitted). "The party bringing an equitable estoppel claim 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.'" *Id.* (citation omitted). The party invoking equitable estoppel must prove it by clear and convincing evidence. *Id.*

Mitek contends that it "detrimentally relied on Plaintiff's representations when Plaintiff consented to be bound by Hyrecar's Terms of Service and Privacy Policy." (Def.'s Mem. Law Supp. Mot. Compel Arb., Dkt. # 15-1, at 13.) According to Mitek, it "relied upon Plaintiff's representation – here, his consent to Hyrecar's biometric practices and his agreement to arbitrate disputes related to those practices – in its relationship with Hyrecar." (*Id.* at 14.) But this assertion contradicts both Hyrecar's Terms of Service, which state that users' interactions with "Third Party Platforms" are governed by the third-party's terms and conditions, and Hyrecar's Privacy Policy, which expressly states that Hyrecar "does not control third party websites," acknowledges that third parties "have their own rules about the collection, use and disclosure" of the user's information, and directs users to "read the terms of use and privacy policies of the other websites that you visit."

Moreover, Mitek fails to demonstrate reliance. While Mitek argues that it detrimentally relied on the consent Plaintiff provided to Hyrecar to collect his biometric data for the purpose of identity verification and to use third-party providers to provide that service, it fails to point to any evidence of that reliance. The *Sosa* court specifically pointed to the lack of evidence of reliance, in part, in denying the defendant's motion to compel arbitration. 8 F.4th at 641 ("[The defendant] failed to present any evidence of its detrimental reliance on any such representation as required by Illinois law.") Simply asserting that it detrimentally relied on Plaintiff's representations is different from pointing to evidence demonstrating that reliance. Mitek has not proved equitable estoppel by clear and convincing evidence.

Finally, Mitek's reference to "fundamental fairness" is unavailing. (Def.'s Reply, Dkt. # 22, at 8) (citing *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000) ("The linchpin of equitable estoppel is equity – fairness.")). Mitek claims that it would be unfair not to enforce the arbitration provision because it is "highly unlikely" that "in less than 72 hours," Plaintiff registered with Hyrecar, became aware of a potential BIPA violation, found and retained counsel who filed a 52-paragraph class action complaint, and sued Mitek instead of Hyrecar. Mitek refers to this sequence of events as "artful pleading" – in other words, bad faith. But it is common

knowledge that class counsel often construct lawsuits by recruiting plaintiffs to pursue claims under statutes that award attorney's fees. Whether or not that occurred here, Mitek fails to point to any case law that requires estopping Plaintiff from circumventing the arbitration provision by suing a nonsignatory and nonbeneficiary – especially here where the challenge to the applicability of the arbitration provision was successful.

For the reasons stated above, Mitek's motion to compel arbitration [15] is denied.

**Date**: May 4, 2022

**Ronald A. Guzmán**
**United States District Judge**

6